IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 21, 2003 Session

## DONALD DEVON DISHER, JR. v. KAROL LOUISE DISHER

**Direct Appeal from the Chancery Court for Henderson County**
**No. 12236     Joe C. Morris, Chancellor**

---

**No. W2002-01421-COA-R3-CV  - Filed December 22, 2003**

---

This appeal arises from a divorce proceeding.  The chancery court granted the parties a divorce and awarded Wife rehabilitative alimony in the amount of  two thousand dollars ($2,000.00)  per month for a period of two (2) years followed by three thousand dollars ($3,000.00)  per month for a period of six (6) years.  The court awarded Wife one hundred percent (100%) of the marital residence and ordered that the marital property be divided sixty/forty (60/40), with Wife receiving sixty percent (60%) and Husband receiving forty percent (40%).  In addition, the court awarded Wife $150,000 on her interspousal tort claim.  The court also awarded Wife the full amount of her attorney fees and other expenses.  The parties raise multiple issues on appeal.  For the following reasons, we reverse in part, vacate in part and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed in Part,**
**Vacated in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

David W. Camp, Jackson, TN, for Appellant

H. Wayne Vaiden, Jr., Memphis, TN, for Appellee

### OPINION

### Facts and Procedural History

Donald Disher ("Husband") and Karol Disher ("Wife") were married in October of 1983.  The parties separated in March of 1998 and Husband subsequently filed for divorce.  Wife filed her answer and a counter-complaint for divorce on July 8, 1998.  In her counter-complaint, Wife sought a divorce on the grounds of adultery, cruel and inhuman treatment, and irreconcilable differences.  Wife also sought sole custody of the parties' minor daughter.  In addition, Wife brought a tort action

against Husband, claiming that she had contracted Human Papilloma Virus ("HPV") through sexual relations with Husband. Wife also claimed that Husband knew or had reason to know that he was suffering from genital herpes and that it could be transmitted through sexual intercourse. Wife claimed that she contracted both of these diseases through sexual intercourse with Husband and that Husband "breached the duty of care owed to [her] by failing to take precautions to prevent the transmission of these diseases."

The trial court conducted hearings on July 12, 2001, and March 21, 2002, and the final decree of divorce was entered on May 15, 2002. The final decree granted Wife a divorce on the grounds of adultery and awarded her full custody of the parties' minor child. The trial court awarded Wife rehabilitative alimony in the amount of two-thousand dollars ($2,000.00) per month for a period of two (2) years followed by three-thousand dollars ($3,000.00) per month for a period of six (6) years. With respect to the marital property, the court awarded Wife the marital home, then divided the remaining marital property, with Wife receiving sixty percent (60%) and Husband receiving forty percent (40%). In addition, the trial court ordered Husband to pay Wife the sum of $14,850.00 to be used for home repairs. The court also awarded Wife her attorney fees in the amount of $74,070.30 and ordered Husband to pay all court costs. Finally, the court awarded Wife $150,000.00 for her tort claim, which was characterized as alimony *in solido*.

The court issued findings of fact and conclusions of law on the tort issue, which were incorporated into the Order of Judgment entered May 15, 2002. In its findings and conclusions, the court found that Wife underwent a blood test in 2001 which revealed that Wife had the genital herpes virus in her body. The court found that Wife's testimony that she never had a cold sore in her life was undisputed. The court further found that Husband presented no evidence that he did not have HPV or genital herpes in his bodily composition. The court concluded that Wife had only had one sexual partner in her lifetime, that being Husband, and that "[a]ll of the proven circumstances of this case directly point to Husband as the source of [W]ife's venereal disease problems, and there is absolutely no medical proof to the contrary." The court also concluded that Dr. Reggie Henderson ("Dr. Henderson") unequivocally stated that he believed that Wife's medical conditions were acquired from Husband. The court stated that it was bound to accept the testimony of Dr. Henderson as it was not refuted or contradicted. The court found that Dr. Henderson's testimony clearly indicated that Wife had both HPV and the herpes virus in her bodily composition and that Dr. Henderson was of the opinion, to a reasonable degree of medical certainty, that Wife's only source of these two conditions was through sexual relations with Husband. Finally, the court concluded that Husband produced no proof to the contrary, despite an opportunity to do so. The court concluded that the "obvious inference from that lack of such opposition is to the effect that there could have been no such opposing proof of a medical nature."

**Issues**

I.    Whether the trial court erred in awarding Wife her attorney fees and expenses.

II.     Whether the trial court erred in its award of alimony.

III.    Whether the trial court erred in awarding Wife $150,000.00 for her claim that Husband committed an interspousal tort when he allegedly infected her with Human Papilloma Virus and genital herpes.

IV.     Whether the trial court erred in its distribution of the marital property.

V.      Whether Wife is entitled to attorney fees incurred on appeal.

## Standard of Review

We review the trial court's conclusions of law "'under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts.'" *Kendrick v. Shoemake*, 90 S.W.3d 566, 569-70 (Tenn. 2002) (quoting *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001)). With respect to the trial court's findings of fact, our review is *de novo* upon the trial court's record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). When the trial court does not make specific findings of fact, we must conduct a review of the record to determine where the preponderance of the evidence lies. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond*, 521 S.W.2d 806, 808 (Tenn. 1975)).

## Law and Analysis

Although Husband begins by raising the attorney's fees issue, we will first address his argument that the marital property distribution was inequitable. We will then address Husband's arguments regarding the alimony award, followed by his arguments with respect to the tort issue, and conclude by addressing the attorney's fees issues.

In making an equitable distribution of the marital property, the trial court is to consider the factors enumerated in Tennessee Code Annotated section 36-4-121(c). *Fulbright v. Fulbright*, 64 S.W.3d 359, 365 (Tenn. Ct. App. 2001). These factors include:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

TENN. CODE ANN. § 36-4-121(c).

As previously noted by this Court:

The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d 163 at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Ten. App. 1990).

*Fulbright*, 64 S.W.3d at 366 (citing *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1988)). The trial court is afforded wide discretion in dividing the marital property. *Koch v. Koch*, 874 S.W.2d 571, 579 (Tenn. Ct. App. 1993); *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991) (citations omitted). Thus, the trial court's distribution of the marital property is given a presumption of correctness that this Court will not overturn unless it is contrary to the preponderance of the evidence. *Barnhill*, 826 S.W.2d at 449 (citing *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984)).

Husband claims that the trial court erred in its disposition of the marital property. Specifically, Husband claims that the court erred in awarding one hundred percent (100%) of the marital residence to Wife, then awarding Wife sixty percent (60%) of the remaining marital property. Husband argues that by awarding Wife one hundred percent (100%) of the marital residence, the court erred because it did not equitably distribute this marital asset. Husband contends that the court erred by failing to consider the marital home a marital asset. Husband also alleges that the trial court erred in ordering him to pay Wife $14,850.00 for repairs to the home. In addition, Husband claims that the trial court failed to consider the factors in Tennessee Code Annotated section 36-4-121(c).

In the final divorce decree, the trial court stated:

5. That the marital home of the parties located at 335 Eastern Shores Drive, Lexington, Tennessee, be and the same is hereby awarded to the wife and the interest of the husband in said property is hereby divested out of him and into the wife. Further, the husband be and he is hereby ordered to pay to the wife the sum of fourteen thousand eight hundred fifty dollars ($14,850.00) for necessary home repairs. Further, the lawn care equipment, household furniture and furnishings, and weight and exercise equipment located on said property be and the same is hereby awarded to the wife. Further, the wife be and she is hereby awarded the 1994 Ford Taurus automobile.

6. That the wife be and she is hereby awarded sixty percent (60%) of the marital assets of the parties, including the husband's profit sharing plan, pilot's money purchase pension plan and pension plan with FedEx Corporation.

It appears from the trial court's order that Wife received the marital residence and the other marital property mentioned in the order, then received sixty percent (60%) of the remaining assets. Unfortunately, we are unable to compare the final amount received by each party because we cannot decipher the value placed on the specific items of marital property and there are no findings of values by the trial court in the record.[1] Several items of marital property are given differing values by the parties. The values attributed to these items of marital property range from a few hundred to several thousand dollars in difference. In addition, despite the trial court's recognition of the dispute in value for several assets, the court below failed to make findings of the values of the marital assets. Finally, the trial court, while it did address lawn equipment, household furnishings, and one of the parties' cars, it did not adopt either of the parties' proposed distribution of marital personal property, making it impossible for this Court to determine the value of each party's marital personalty. Therefore, we must remand this case to the trial court for a determination as to the value of each marital asset and for an equitable distribution of those assets.

---

[1] The Appellant asserts, in a valuation table, that the trial court made findings as to the value of the marital assets. However, our review of the entire record reveals no such findings.

Husband also takes issue with the trial court's award of alimony to Wife. However, in light of our disposition of the issue regarding the distribution of the marital property, we will not address the amount and duration of spousal support. Since Tennessee Code Annotated section 36-5-101(d)(1)(H) provides that the distribution of the marital property "may have an effect upon the amount of support and maintenance," the trial court may reconsider the amount of support awarded in light of the revised property distribution. *See Cooper v. Cooper*, No. 85-305-II, 1986 Tenn. App. LEXIS 3323, at *7-8 (Tenn. Ct. App. Oct. 1, 1986).

Next, Husband contends that the court erred in awarding Wife $150,000 on her interspousal tort claim. The question of whether Tennessee recognizes a claim for negligent transmission of a venereal disease was answered in the affirmative by this Court in *Hamblen v. Davidson*, 50 S.W.3d 433 (Tenn. Ct. App. 2000). In *Hamblen*, we stated that a plaintiff claiming to have been infected with a venereal disease must establish the same elements required in a traditional negligence claim. *Id*. at 438. These elements are "(1) the existence of a legal duty; (2) breach of that legal duty; (3) an injury to the plaintiff; (4) causation in fact; and (5) proximate or legal causation." *Id*. (citing *Roe v. Catholic Diocese of Memphis, Inc*., 950 S.W.2d 27, 31 (Tenn. Ct. App. 1996)).

The threshold question is whether a duty exists. "If a reasonable person would not have foreseen the harm, then there is no duty of care, regardless of whether the defendant's act caused harm to the plaintiff." *Id*. at 439 (citing *Eaton v. McLain*, 891 S.W.2d 587, 594 (Tenn. 1994)). "'The pertinent question is whether there was any showing from which it can be said that the defendant[] reasonably *knew or should have known* of the probability of an occurrence such as the one which caused plaintiff's injuries.'" *Id*. (citing *Doe v. Linder Constr. Co.*, 845 S.W.2d 173 (Tenn. 1992)). Thus, a person who "knows or should know he has a venereal disease has a legal duty to use reasonable care in preventing the disease's transmission." *Id*. (citations omitted).

Other jurisdictions have found that "an individual has a duty to refrain from sexual contact or warn of his symptoms if he knows or suspects that he has symptoms 'suggesting any kind of venereal disease.'" *Id*. at 439 (citing *Meany v. Meany*, 639 So. 2d 229, 236 (La. 1994)). In the case *sub judice*, the record indicates that Husband engaged in five (5) extra-marital affairs. By Husband's own admission, seventy-five percent (75%) of these encounters were unprotected. There is no evidence in the record, however, that Husband ever had a rash, lesions, sores, or any other indication that he was infected with HPV or the herpes virus. Additionally, there was no evidence that Husband was ever diagnosed with HPV or the herpes virus and, in fact, the record indicates that Husband tested negative to HPV in 1991. Without such proof, this Court cannot say that Husband knew or should have known that he was infected with such viruses. As such, no duty can be imposed in this situation. Thus, we reverse the trial court's award of $150,000.00 damages.

Husband argues that the trial court erred in awarding Wife her attorney's fees because she failed to present adequate proof, the amount of the fees were excessive, and she had the ability to pay her own fees and expenses. This Court has repeatedly held that an award of attorney's fees in a divorce case is treated as spousal support and should be characterized as alimony *in solido*. *Wild v. Wild*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001) (citing *Sannella v. Sannella*, 993 S.W.2d 73, 76

(Tenn. Ct. App. 1999); *Smith v. Smith*, 984 S.W.2d 606 (Tenn. Ct. App. 1997); *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1988); *Gilliam v. Gilliam*, 776 S.W.2d 81 (Tenn. Ct. App. 1988)). Accordingly, when reviewing a court's decision to award attorney's fees, we must recognize the wide discretion given to the trial court. *Id.* Appellate courts may reverse a trial court's decision to award attorney's fees, however, "where the evidence preponderates against the award, and a manifest injustice will be done" by allowing the trial court's decision to stand. *Id.*

With attorney's fees being a form of alimony, courts must balance the factors given in section 36-5-101(d)(1) of the Tennessee Code, as stated above, in determining a proper award. Again, the cornerstones in balancing the factors are the real need of the requesting spouse and the ability of the obligor spouse to pay. *Aaron*, 909 S.W.2d at 410. Although the relative fault of the parties is to be considered, awards should not be punitive in nature. *Anderton*, 988 S.W.2d at 682. Instead, the true purpose should be to "aid the disadvantaged spouse to become and remain self-sufficient and . . . to mitigate the harsh economic realities of divorce." *Id*. (citing *Shackleford v. Shackleford*, 611 S.W.2d 598, 601 (Tenn. Ct. App. 1980)).

Due to our disposition of issues regarding the distribution of the marital property and the alimony issue, this Court cannot address the attorney's fees issue. Thus, we vacate the trial court's award of attorney fees to Wife and remand for a determination of whether attorney's fees are proper in light of the trial court's revised decision regarding distribution of the marital property and alimony.

Finally, Wife asks this Court to award her attorney's fees incurred on appeal. On May 19, 2003, Wife filed a motion seeking reimbursement from Husband for attorney's fees and costs in the amount of $7,111.55. In support of her motion, Wife submitted the affidavit of her attorney which set forth the legal work performed on her behalf. Thereafter, on June 13, 2003, Wife submitted an amendment to her motion for attorney's fees and costs in which she alleged that Husband was financially able to pay Wife's attorney's fees and that she was not able to do so.

The Tennessee Supreme Court has defined the factors that should be applied when considering a request for attorney's fees incurred on appeal. These factors include the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered. *See Folk v. Folk*, 357 S.W.2d 828, 829 (Tenn. 1962). Accordingly, because we have remanded this case to the trial court for further consideration of questions presented, we find it equitable to decline to award Wife attorney's fees incurred for this appeal.

## Conclusion

Based on the foregoing conclusions, we hereby reverse in part, vacate in part and remand for further proceedings consistent with this opinion. Costs on appeal are assessed equally against the Appellant, Donald Disher, and his surety, as well as the Appellee, Carol Disher, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE