IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 8, 2001 Session

## THOMAS FULBRIGHT v. BEVANS RAMSEY FULBRIGHT

**Appeal from the Circuit Court for Hamilton County**
**No. 98D2292     L. Marie Williams, Judge**

**JULY 25, 2001**

**No. E2000-02040-COA-R3-CV**

Thomas Fulbright ("Husband") filed for divorce alleging inappropriate marital conduct on the part of Bevans Ramsey Fulbright ("Wife"). Wife filed a counter-claim seeking a divorce on the same basis. The Trial Court granted both parties a divorce, divided the marital property, awarded Wife rehabilitative alimony, and granted primary physical custody of the three minor children to Wife. Husband appeals all of these determinations, and Wife appeals the Trial Court's refusal to award her attorney fees. We affirm as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the**
**Circuit Court Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

John P. Konvalinka and Mathew D. Brownfield, Chattanooga, Tennessee, for the Appellant Thomas Fulbright.

Michael R. Campbell, Chattanooga, Tennessee, for the Appellee Bevans Ramsey Fulbright.

# OPINION

## Background

Husband filed a complaint seeking a divorce on the basis of irreconcilable differences or, in the alternative, inappropriate marital conduct. Wife counter-claimed seeking a divorce on the same basis. The parties have three minor children, ages 9, 10, and 12 when the divorce action was filed. Husband is a successful neurosurgeon in Chattanooga. Throughout the marriage, Wife was a homemaker and primary care-giver to the parties' three minor children.

Husband testified that he obtained his medical degree in 1981. Husband and Wife married in 1986, when Husband was in his fifth year of residency. Husband met Wife at the University of Arkansas where Wife was an emergency room nurse. After the parties were married, they moved to Illinois. While in Illinois, Husband's gross annual income ranged from $730,000.00 to $960,000.00. Husband stated that he and Wife moved to Chattanooga because Wife chronically complained about Illinois and other circumstances made Chattanooga seem to be a desirable place to live. Husband's income in Chattanooga was substantially less than in Illinois.

According to Husband, Wife in 1997 began to spend a lot of time on the computer e-mailing and chatting with people. This eventually culminated in Wife's arranging a rendezvous in Atlanta with Jeff Bishop. This rendezvous never happened because Mr. Bishop's wife found out about it. Wife had gone so far as to obtain adjoining rooms at an Atlanta hotel for her and Mr. Bishop.

Husband stated that Wife would spend in excess of 30 hours per week on the computer. Husband testified that he learned after he and Wife separated that one of the men with whom Wife had been communicating on the computer had actually spent time with Wife in the parties' home and at their beach house.

Husband admitted that after he and Wife separated, but while they were still married, he began dating a Ms. Billington. Husband and Ms. Billington were sexually intimate.

Husband's employer pays for the lease of a vehicle as well as gas and maintenance. Husband is also furnished with health insurance and $25,000.00 annually towards retirement. Husband's estimated income and expense statement filed with the Trial Court showed net monthly income of $17,921.00 and net monthly expenses of $12,691.00, leaving $5,230.00. Husband's listed net monthly expenses include: (1) child support in the amount of $4,100.00; and (2) entertainment, vacations, gifts, dining out, recreational activities and related costs for Husband and the children in the amount of $1,568.00. Husband's expenses did not include alimony payments. Wife claimed net monthly expenses of $5,269.91 with no income from wages. Husband testified that a staff nurse can make approximately $44,000.00 per year in the Chattanooga area once licensure is established.

Husband filed a proposed parenting plan in which he requested the Trial Court to grant him physical custody of the children on an alternating weekly basis. Husband, a full-time neurosurgeon, claimed that on weeks he had the children, he could lighten his work load in order to take care of the children, although he would need assistance with picking up the two younger children from school.

At the time of trial, Wife was 43 years old. Wife graduated from nursing school as a registered nurse in 1977 and has an inactive nursing license from the State of Arkansas. Wife was a nurse at University Hospital in Little Rock, Arkansas, when she first met Husband in 1982. She continued to work as a nurse until the end of 1986, at which time she was earning about $30,000.00 a year. Wife testified that she and Husband had an understanding that he would work and be the "breadwinner" and she would stay home with the children and be a "homemaker". Wife has not worked outside the home since the parties' first child was born. Wife stated that she took care of the children's medical and dental needs and was the person who nurtured them. In Wife's opinion, having the children alternate each week between their parents was not feasible because it would entail a lot of cooperation between her and Husband which was "virtually impossible at this point." According to Wife, Husband has been mean and abusive to her since they separated. Wife also maintains they are unable to make decisions by agreement on matters concerning the children.

Wife claimed that Husband was very controlling and never allowed her to be an equal partner. She described Husband's main focus in life to be money, power and social status, and referred to herself as a good "show dog" for him. According to Wife, on numerous occasions during the marriage, Husband told her he did not want to be married. While living in Illinois, Husband admitted to a three year affair with a coworker. Wife's reaction to this was pain and distrust which she claims remained present throughout the remainder of the marriage.[1] Wife testified that after moving to Chattanooga, she found a box of condoms hidden inside Husband's folded shirts in the closet. She claimed that she and Husband did not use condoms. Wife moved the condoms so they would be visible and Husband would know that she had found them. A few days later, they were gone. Wife stated that Husband denied having or seeing the condoms and called Wife a liar.

Wife indicated that her earning capacity would be $30,000.00 per year if she reactivated her nursing license. She also stated that she desired to stay at home with the children until the youngest child reached middle school, approximately three years from the date of trial. Wife claimed that in addition to the income she could expect from the Morgan Stanley Dean Witter account, she would need at least $5,000.00 per month to maintain a comfortable lifestyle, even one that was not as comfortable as when the parties were married. Wife admitted that prior to and after separating from Husband, she would spend as much as 30 hours per week on line through America On Line. She also admitted she had an affair with the person with whom she had spent time with at her home in Chattanooga and the parties' beach house. She also admitted setting up the aborted

---

[1] The parties cohabitated after this alleged affair, which Husband denies ever occurred. Because of the cohabitation, Wife did not argue that this alleged affair was a basis for her to receive a divorce in the present action.

rendezvous with Mr. Bishop. Wife agreed that Husband was a good Father and loved the children. Neither Husband nor Wife have any significant medical problems.

The Trial Court declared the parties divorced having found both guilty of inappropriate marital conduct. The Trial Court also found both parties to be strong parents who loved their children and possessed the characteristics to assist the children in growing into contributing members of society. The Trial Court noted that Wife was seeking primary physical custody of the three children, and Husband was seeking to have custody alternate on a weekly basis. The Trial Court found, however, that it was not in the best interests of the three minor children to alternate weekly. Instead, the Trial Court found it was in the children's best interests for Wife to have primary physical custody so she could attend to their needs rather than having those needs met by a third party. The Trial Court adopted a Permanent Parenting Plan giving Husband residential time with the children on alternating weekends and one night a week in those weeks he does not have the children for the weekend. The Trial Court also gave Husband one week residential time during the Christmas holiday, three weeks during the summer, every other spring break, and divided up the various holidays.

The Trial Court awarded Husband assets in the amount of $1,622,213.00 and liabilities in the amount of $441,646.00, for a total net award to Husband of $1,180,567.00. Wife was awarded total assets of $1,190,401.00, less liabilities of $25,000.00, for a total net to Wife of $1,165,401.00. The specifics of the award at issue in this appeal center around Husband's claim that the Trial Court erred in not considering the tax consequences of the property division. The Trial Court awarded Husband a Morgan Stanley Dean Witter account valued at $372,642.00 in pre-tax dollars, and an Evergreen Management account valued at $84,936.00 in pre-tax dollars. Wife was awarded a different Morgan Stanley Dean Witter account valued at $581,721.00 in after tax dollars. In addition, Husband was awarded a farm in Shelby County, Illinois, which the Trial Court valued at $217,340.00, but which Husband claims was worth $152,178.00 after taxes and commissions. Husband admitted at trial he had no plans on selling this farm in the near future. The Trial Court further ordered Husband to pay the 1999 income taxes.

The Trial Court found Husband's net income to be $21,500.00 per month. The Trial Court also found it desirable for Wife to stay home and raise the children. The Trial Court held:

> The standard of living and the style of living established by the parties have permitted the children to become acclimated to a situation in which their mother remains home with them and is available to them. This situation should not be disturbed at this time. The Court also finds the parties both have contributed to the demise of the marriage through the lack of communication and self-centered acts and poor judgment. The Court also finds whereas Dr. Fulbright has contributed significantly to the marriage monetarily and intangibly, the Court also finds the contributions by Mrs. Fulbright

-4-

have been equally important. The division of assets and liabilities allocates income-producing assets to both parties.

The Trial Court then ordered Husband to pay rehabilitative alimony in the amount of $4,000.00 per month for eight years. Husband was ordered to pay Wife $4,100.00 per month in child support. He also was required to pay $1,000.00 per month for each of the three children into a college fund and to pay for the private school education of all three children. Finally, the Trial Court ordered each party to pay his or her own attorney fees.

Both parties filed motions to alter or amend the judgment. The Trial Court essentially denied these motions, but it did alter the alimony award somewhat. Wife claimed she needed more alimony. Husband argued Wife should not receive any alimony or the amount she received should be reduced. In ruling on the motions, the Trial Court noted that with the awards already given Wife, it was difficult to find Wife was in any need. Husband, however, certainly had the ability to pay. Although the Trial Court did not alter the amount of alimony awarded to Wife, it did modify its previous order to state that the rehabilitative alimony that was awarded would not terminate upon the remarriage of Wife.

**Discussion**

On appeal, Husband challenges the Trial Court's division of assets, award of rehabilitative alimony, award of divorce to both parties, and refusal to grant him alternating residential custody of the children. Husband also challenges the Trial Court's order requiring him to repay $36,000.00 to Wife for funds he allegedly dissipated out of a retirement account awarded to Wife, but not requiring Wife to repay $3,777.00 for funds she dissipated out of an account he was awarded. Wife appeals the Trial Court's conclusion that each party should be responsible for their own attorney's fees.

A review of findings of fact by a trial court is *de novo* upon the record of the trial court, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). Review of questions of law is *de novo*, without a presumption of correctness. *See Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

We first address the Trial Court's determination that both parties were entitled to a divorce. At trial, each party claimed entitlement to a divorce and presented proof in support of his or her position. Both Husband and Wife admitted to having an affair during the course of the marriage. While Husband's affair occurred after the parties were separated, this does not legally negate such behavior. *See Perry v. Perry*, 765 S.W.2d 776, 779 (Tenn. Ct. App. 1988); *Hausmann v. Hausmann*, 1997 WL 672649, No. 01A-01-9702-CH-00092 (Tenn. Ct. App., Oct. 29, 1997)("The fact that the alleged adultery may have occurred after the parties separated does not prevent the trial court from granting one party a divorce on the basis of the other party's adultery."). For the alleged inappropriate marital conduct which was not admitted, the Trial Court's factual conclusions were

based in large part on witness credibility. The Trial Court had the opportunity to observe both Wife and Husband, as well as their manner and demeanor. The Trial Court's factual determination involving witness credibility will be given great weight on appeal. *See Barnhill v. Barnhill*, 826 S.W.2d 443, 448 (Tenn. Ct. App. 1991)(citing *Town of Alamo v. Forcum-James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959)).

We are further guided in our resolution of this issue by Tenn. Code Ann. § 36-4-129(b) which provides that:

> The court may, upon stipulation to or proof of any ground for divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone.

In its Order, the Trial Court declared: "The parties are divorced pursuant to *Tennessee Code Annotated* 36-4-129, the Court finding both parties guilty of inappropriate marital conduct, each towards the other." Not only does Husband disagree with this conclusion, but he asserts error because the Trial Court did not set forth in the order exactly what inappropriate marital conduct Husband engaged in. In his brief, Husband discusses in detail the inappropriate marital conduct of Wife. Husband does not, however, argue that the record does not support a finding of his own inappropriate marital conduct. Upon reviewing the entire record in this case, we cannot say that the evidence preponderates against the Trial Court's findings, nor could we given the fact that both parties admitted to conduct which would entitle the other party to a divorce. While detailed findings of fact and conclusions of law are always favored on appeal, we do not believe the Trial Court was required to state with specificity in its order exactly what Husband's inappropriate marital conduct was given his admitted adultery. Husband's argument on appeal is baseless. We find no error by the Trial Court on this issue.

Next, we address Husband's argument that the Trial Court erred in not awarding alternating residential custody. The standard of review on appeal for issues addressing child custody and visitation was recently set forth by our Supreme Court in *Eldridge v. Eldridge*, 42 S.W.3d 82 (Tenn. 2001). There, the Supreme Court stated:

> The Court of Appeals correctly held that the standard for appellate review of a trial court's child visitation order is controlled by our decision in *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). There, we noted that "'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge.'" *Id*. at 429 (quoting *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973)). Accordingly, we held that a "trial court's decision [on visitation] will not ordinarily be reversed absent some abuse of that discretion." *Id*.

In reviewing the trial court's visitation order for an abuse of discretion, the child's welfare is given "paramount consideration," *id.* (quoting *Luke v. Luke*, 651 S.W.2d 219, 221 (Tenn. 1983)), and "the right of the noncustodial parent to reasonable visitation is clearly favored." *Id.* Nevertheless, the noncustodial parent's visitation "may be limited, or eliminated, if there is definite evidence that to permit . . . the right would jeopardize the child, in either a physical or moral sense." *Id.* (quoting *Weaver v. Weaver*, 37 Tenn. App. 195, 261 S.W.2d 145, 148 (1953)).

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Id.* at 85. Moreover, *Eldridge* pointed out that the function of the appellate courts is not to "tweak" a visitation order in the hopes that a more reasonable or "better" result can be reached. Appellate courts correct errors, and when no error is evident from the record, the trial court's ruling must stand. *Id.* at 88.

In his brief, Husband has done nothing more than explain to this Court how he will be able to properly care for the children given his busy schedule if he were to be awarded alternating custody on a weekly basis. He does not, however, explain why the Trial Court's conclusion with regard to custody and visitation is erroneous. The issue is not whether Husband could properly care for his three children, which we will assume he can. Rather, the issue is whether the Trial Court abused its discretion in awarding Wife residential custody and Husband visitation pursuant to the visitation schedule previously discussed. We hold that the Trial Court's conclusion that it would be in the best interests of the children for Wife to have primary physical custody was not an abuse of discretion and, therefore, affirm this determination.

With regard to the Trial Court's division of the marital assets, the many factors to be considered by a trial court in making an equitable distribution of property are set forth in Tenn. Code Ann. § 36-4-121(c), and include age, physical and mental health, employability, the contribution of a party to the marriage as homemaker, tax consequences, etc. A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449

(Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998), when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

Husband claims that the property was not equitable divided because the Trial Court did not consider the tax consequences of some of the assets awarded to him. In Husband's brief, he correctly points out that the Trial Court requested additional information with regard to tax consequences. In response, Husband submitted additional evidence as to the tax consequences through briefs and exhibits. After this additional information was submitted, the Trial Court concluded that "the tax consequences addressed by the parties in briefs either were not proven at trial or the proof was such that the division of assets and liabilities still would be equitable once tax consequences were considered." The Trial Court then ordered Husband to pay the 1999 income tax of the parties. Husband claims that based on his applicable tax rate, when deducting for the taxes he would have to pay if he liquidated the taxable assets, he was awarded only forty-one percent of the marital estate valued at over $2,100,000.00. Since it is apparent that the Trial Court did in fact consider the proof on this issue, we need decide only whether or not the Trial Court's conclusion that the asset division still would be equitable is against the preponderance of the evidence.

While the tax consequences certainly are a factor to be considered in making an equitable distribution of property, it is but one factor. Tenn. Code Ann. § 36-4-121(c). At trial, Wife's expert accountant testified as follows with regard to the effect of the tax consequences:

> There is no intent [on the part of Husband] to dispose of these assets in the near future. And on the IRA accounts, the retirement accounts, if those stay in those accounts until he retires, they will be earning interest and dividends at a nontaxable rate. And with the compounding effect it will probably exceed – equal if not exceed any potential taxes as a result here.

The expert did admit that this conclusion assumes no increase in the applicable tax rate[2] and that Husband's investments appreciate in value. There was no proof at trial that Husband intended to liquidate any of these assets in the near future. Thus, while eventually they will be subject to income tax, this may not occur for many years. In the interim, Husband will receive income, and any appreciation on the currently untaxed assets. There was also expert testimony that these assets will be earning interest and dividends at a tax deferred rate which, over time, will probably meet or exceed any potential taxes. Based on the foregoing, we hold that the Trial Court's conclusion that the division of marital assets in this case was equitable notwithstanding any tax consequences was not error. Likewise, we conclude that the Trial Court's requiring Husband to pay the 1999 taxes does not render the division of property inequitable. Having found no error, we affirm the Trial Court's determination as to the property division.

Husband claims that Wife is not entitled to any rehabilitative alimony or, alternatively, that the amount awarded should be reduced. Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998); *Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996).

Determinations concerning the amount and duration of alimony are factually driven and require a balancing of the various factors contained in Tenn. Code Ann. § 36-5-101(d)(1). *Herrera v. Herrera*, 944 S.W.2d 379, 387-88 (Tenn. Ct. App. 1996). These factors include:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C) The duration of the marriage;
>
> (D) The age and mental condition of each party;
>
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

---

[2] Likewise, any decrease in the applicable tax rate (such as the decrease recently championed by President Bush) would lessen any claimed impact on the property awarded to Husband.

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The statute also provides that it is the intent of the general assembly that an economically disadvantaged spouse be rehabilitated whenever possible with the payment of temporary support and maintenance. When this is not feasible, the court may award support and maintenance on a long term basis, or alimony *in futuro*. Tenn. Code Ann. § 36-5-101(d)(1). Hence, there is a preference for rehabilitative alimony over alimony *in futuro. See Self v. Self*, 861 S.W.2d 360, 361 (Tenn. 1993).

While Husband claimed his net monthly income was $17,921.00, the Trial Court concluded that his income fluctuated and his net income was actually $21,500.00. Utilizing this figure[3], and deducting Husband's expenses including the alimony and child support consisting of $4,100.00 plus the contribution to the college education funds as ordered by the Trial Court, Husband would have $1,809.00 per month remaining.

Wife claimed net monthly expenses of $5,269.91 with no income from wages. Subtracting the mortgage payment since Husband was ordered to pay that liability, and adding the expenses of raising the children as set forth by Wife, her monthly expenses are $5,856.00.

---

[3] The Trial Court's conclusion that Husband's net income was actually $21,500.00 per month has not been challenged on appeal.

We hold that the Trial Court did not err in holding that Wife was entitled to rehabilitative alimony for a period of eight years. This will allow Wife to remain at home with the children until the youngest child enters middle school, and will give Wife five additional years of alimony in which to rehabilitate herself toward reentering the work force. Nevertheless, after taking into account the facts of this case as contained in the record and after "careful[ly] balanc[ing] . . . the factors in Tenn. Code Ann. § 36-5-101(d)(1)," we hold that the Trial Court's award of rehabilitative alimony should be reduced from $4,000.00 to $2,500.00 per month. *See Anderton v. Anderton*, 988 S.W.2d 675, 683 (Tenn. Ct. App. 1999). In making this reduction, we give specific weight to, among other relevant factors, Wife's needs; Husband's ability to pay; the duration of the parties' marriage and their ages; their relative educational levels, income, expenses, and earning capacities; and the division of the marital property.

The Trial Court ordered that the award of rehabilitative alimony would not terminate upon the remarriage of Wife. Pursuant to Tenn. Code Ann. § 36-5-101(d)(2), an award of rehabilitative alimony may be increased, decreased, terminated, extended, or otherwise modified "upon a showing of substantial and material change in circumstances." In *Stockman v. Stockman*, 1999 WL 617637, No. 01A01-9801-CH-00026 (Tenn. Ct. App., Aug. 17, 1999), this Court held that cohabitation, in and of itself, was insufficient to trigger a review of an award of rehabilitative alimony. In so doing, the *Stockman* Court stated:

> In *Isbell v. Isbell*, 816 S.W.2d at 735, the Supreme Court rejected the argument that remarriage is by its nature rehabilitative and held that remarriage itself did not warrant termination of rehabilitative alimony, stating, "The presumption that the state of marriage in and of itself meets the economic needs of the female, or indeed of either spouse, is an antiquated presumption that may not be indulged in modern society," *Isbell*, 816 S.W.2d at 739. Similarly, in *Gregory v. Gregory*, No. 03A01-9503-CH-00093, 1995 WL 447786 (Tenn. App. July 31, 1995) (no Tenn. R. App. P. 11 application filed), this court held that remarriage does not constitute a change of circumstances sufficient to warrant termination of rehabilitative alimony.

*Stockman*, 1999 WL 617637 at *5. This does not mean, however, that her remarriage coupled with other changes would not be sufficient to constitute a "substantial and material change in circumstances." Accordingly, we modify the Trial Court's order by deleting the provision that Wife's remarriage will not terminate Husband's obligation to provide rehabilitative alimony. If a "substantial and material change in circumstances" occurs in the future, then either party may request appropriate relief from the Trial Court at that time.

Wife asserts error in the Trial Court's order insofar as it requires each party to pay his or her own attorney fees. Attorney fee awards are treated as alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). In determining whether to award attorney fees, a trial court

should consider the relevant factors set forth in Tenn. Code Ann. § 36-5-101(d)(1), *supra*. Awards of attorney fees are within the sound discretion of the trial court, and will not be disturbed on appeal unless the evidence preponderates against the award. *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. Cpp. 1995). Applying the relevant factors, we find no error by the Trial Court in ordering each party to pay his or her own attorney fees. This is especially true given the substantial property division each party received as well as the other awards in this case.

The final issues on appeal regard both parties' claims that the other depleted funds from the various accounts awarded to the other by the Trial Court. Wife claims that Husband depleted $36,000.00 from an account she was awarded, and Husband claims Wife depleted $3,777.00 from an account he was awarded. Husband correctly claims that Wife was ordered to pay him $25,000.00 as part of the property division. One of the accounts awarded to Wife was worth $11,000.00 more when the Trial Court's Order was entered than when it was valued by the Trial Court at the time of the trial. The fact that the value of the account increased between the time of trial and the entry of the Order is immaterial, just as it would be immaterial if the value of the account awarded to Wife had decreased. Husband argues that he is entitled to this $11,000.00, and when considering the $25,000.00 Wife owed him pursuant to the Trial Court's order, they are essentially even and he should not be required to repay the $36,000.00. The Trial Court ordered Husband to repay the $36,000.00, but no mention of the $3,777.00 was made by the Trial Court. Husband is partially correct.

While the record before us is not an example of perfect clarity on this issue, the Trial Court's Order should be modified to reflect what we believe the Trial Court was attempting to do when it ordered Husband to pay the $36,000. Accordingly, after netting the $25,000 Wife was ordered to pay Husband, the Trial Court's Order is modified to order Husband to pay Wife $11,000 less $3,777 resulting in an additional payment from Husband to Wife of $7,223. Therefore, we modify the Trial Court's award of $36,000 from Husband to Wife to $7,223 after netting the $25,000 Wife was ordered to pay Husband.

Wife has requested her attorney fees incurred on appeal. Exercising our discretion and considering all relevant factors, we decline to award wife attorney fees on appeal.

### Conclusion

The decision of the Trial Court is affirmed as modified. This case is remanded to the Trial Court for further proceedings as necessary, if any, consistent with this Opinion. Costs of appeal are taxed equally to the Appellant, Thomas Fulbright, and his surety, and to the Appellee, Bevans Ramsey Fulbright.

_____
D. MICHAEL SWINEY