IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2003 Session

## MARCIA ANN RAINES v. JIMMY RAY RAINES

**An Appeal from the Circuit Court for Wilson County**
**No. 3642DV       Clara W. Byrd, Judge**

_____

**No. M2002-01952-COA-R3-CV - Filed November 3, 2003**

_____

This is a divorce case involving the division of marital property. In 1988, the husband moved into the wife's house. The parties married in 1992 and remained married for ten years. During that time, the parties sold the wife's house and bought a new home with the proceeds. The new home was purchased in the names of both the husband and the wife. In 2002, the parties divorced. The trial court found that the parties' property had become so commingled that virtually none of it could be considered separate property, and divided the marital assets evenly. The trial court also allocated to the wife a larger portion of a marital debt to the wife's mother. From that decree, the wife now appeals. We affirm, finding that the evidence clearly supports the trial court's finding of commingling and transmutation of property, and finding no abuse of discretion in the trial court's allocation of the marital debt.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Frank Lannom, Lebanon, Tennessee, for the appellant, Marcia Ann Raines.

Shawn McBrien, Lebanon, Tennessee, for the appellee, Jimmy Ray Raines.

**OPINION**

In 1988, Petitioner/Appellant Marcia Ann Raines ("Wife") and Respondent/Appellee Jimmy Ray Raines ("Husband") began living together in Wife's house at 5556 Richmond Shop Road ("Richmond Shop Road home"). When they began living together, both parties owned real and personal property. In addition to the Richmond Shop Road home, Wife owned the thirty-five acres upon which it was situated. The home and the acreage were valued at approximately $129,300, and Wife owed no mortgage on the property. Husband helped to make improvements on the Richmond Shop Road property. Wife also owned a mobile home on the Richmond Shop Road land, house furnishings, personal items, and a vehicle.

When the parties began living together, Husband owned a house at 126 Blair Lane, valued at $109,000, with a $50,000 mortgage. After Husband moved in with Wife, he rented the Blair Lane house and used the proceeds to reduce the debt on the property. In addition, Husband had $25,000 in cash, a $6,000 retirement account, a whole life insurance policy worth $4,200, and various tools and equipment. Husband also owned a small rental property on Tater Peeler Road, which he sold by an installment agreement. The $250 monthly installment payments were used by both parties for living expenses.

In February 1992, Wife and Husband were married. After they began living together, but prior to their marriage, the parties purchased cows to be kept on the acreage on which the Richmond Shop Road home was located. Both Wife and Husband contributed to the purchase of the cows. Pigs were kept on the property as well. When the animals were sold, the proceeds went toward the parties' living expenses prior to and during their marriage.

In May 1995, the parties bought an eighty-four acre farm on which to put their cattle. This farm is referred to as "Lannom Farm."[1] In order to obtain the down payment for Lannom Farm, the parties borrowed $25,000 from Wife's mother, Margaret Spears ("Spears"). Later, the parties sold the farm. The entire proceeds of the sale were not used to repay the debt to Spears; instead, the parties loaned $10,779 to Wife's son, Phillip. In an unrelated transaction, the parties borrowed an additional $6,500 from Spears. In looking at the debts to Spears, the trial court found that, at the time of the divorce proceedings, $15,000 was owed on the farm loan, and $2,000 was owed on the smaller loan, for a total of $17,000 owed to Spears.

In approximately December 1996, Wife and Husband bought a new home at 302 East Spring Street ("East Spring Street home"). In order to purchase and make improvements on the East Spring Street house, the parties borrowed approximately $70,000 against the Richmond Shop Road property. That loan was made in the name of both parties, and the title to the East Spring Street house was put in both their names. After the improvements were made to the East Spring Street house, the parties sold the Richmond Shop Road home and paid off the $70,000 loan with part of the proceeds. The remainder of the proceeds, about $22,000, was put into repairing and renovating the East Spring Street house. After the renovation, there were no loans on the East Spring Street property.

At some point after the renovation of the East Spring Street home was completed, the parties obtained a $50,000 home equity loan against the house in order to consolidate unrelated debts the parties had acquired. Later, in a refinancing arrangement, the $50,000 equity loan was removed from the East Spring Street house and placed upon Husband's Blair Lane rental property.

---

[1] The farm was on Richmond Shop Road, the same street as the couple's primary residence. For the sake of clarity, we refer to this property as Lannom Farm.

On October 11, 2001, Wife filed a petition for divorce based on, among other things, inappropriate marital conduct. On December 12, 2001, Husband filed an answer and counter-claim for divorce, also based on grounds of inappropriate marital conduct. The case went to trial on April 18 and May 24, 2002. Both Wife and Husband testified at trial regarding the circumstances relating to the grounds for divorce and the division of marital property. On July 11, 2002, the trial court entered a final decree granting a divorce to both Wife and Husband, based on the inappropriate marital conduct of both parties.

On that date, the trial court also divided the marital property. With the exception of two parcels of real estate not at issue in this appeal, the trial court determined that virtually all of the real property[2] owned by the parties was marital property, finding that "the real properties of the parties have become so co-mingled that no Court could have kept it separate . . . ." The trial court found specifically that "there has been an equal contribution during the marriage by both parties," "that both parties were gainfully employed[,] and that both parties contributed equally to the marriage financially." Consequently, the marital property was divided evenly. As for the $17,000 debt to Spears, the trial court allocated to Wife the $10,779 that was borrowed to loan to her son Phillip, and divided the remaining $6,221 in debt equally between the parties. From that order, Wife now appeals.

On appeal, Wife argues that she was entitled to a greater proportion of the marital assets, because the value of her estate at the time of the marriage was greater than Husband's, and because the parties' commingling of assets prior to their marriage should not have been considered in the property distribution. She also asserts that the trial court should have divided the $17,000 debt to Spears evenly between the parties, rather than burdening her with the entire $10,779 loan for the benefit of her son Phillip.

The classification of property as either separate or marital property is a question of fact. *See Brown v. Brown*, 913 S.W.2d 163, 167 (Tenn. Ct. App. 1994). Therefore, the trial court's findings with respect to property classification are reviewed *de novo*, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999); Tenn. R. App. P. 13(d). Questions of law are reviewed *de novo*, with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). A trial court is afforded wide discretion in dividing marital property, and its distribution will be given "great weight" on appeal. *See Ford v. Ford*, 952 S.W.2d 824, 825 (Tenn. Ct. App. 1997). The trial court's division of marital property will not be disturbed on appeal unless it lacks evidentiary support or results from an error of law or a misapplication of the statutory requirements. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990).

---

[2]The division of personal property is not at issue in this appeal.

The factors to be considered in making an equitable division of marital property are set forth in Tennessee Code Annotated § 36-4-121(c) (Supp. 2002).[3] Although there is a presumption that marital property is owned equally, there is no presumption that marital property should be divided equally. *See Bookout v. Bookout*, 954 S.W.2d 730, 731 (Tenn. Ct. App. 1997). Thus, an equitable division of the marital property need not be an equal division of the property. *See id.* The goal is to divide the assets in a fair and equitable manner. *Fulbright v. Fulbright*, 64 S.W.3d 359, 366 (Tenn. Ct. App. 2001). Each case involving the division of marital property must be decided on its own unique set of facts and circumstances. *See Wade v. Wade*, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994).

Wife argues that the trial court erred in its distribution of marital property because it did not give proper weight to the fact that, when the parties married, Wife's estate was much larger than that of Husband. She notes that, at the time of the marriage, she separately owned the Richmond Shop

---

[3]That section provides:

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c) (Supp. 2002).

Road property, worth $129,300, and maintains that "[t]his property was held separate all the way through the sale of the property in 1997." She also claims that the purchase of the East Spring Street house can be traced to the sale of the Richmond Shop Road property. These facts, Wife argues, establish that the Richmond Shop Road home as well as the property acquired in exchange for that property, i.e. the East Spring Street house, were her separate property. Tenn. Code Ann. § 36-4-121(b)(2). Wife argues that an equitable property division depends, in part, on two factors, "[t]he value of the separate property of each party" and "[t]he estate of each party at the time of the marriage." *See* Tenn. Code Ann. § 36-4-121(c)(6) and (7). In light of those factors, she argues, the trial court erred in finding that the real property was marital property based on commingling of funds, and in dividing the marital property evenly.

Tennessee is a "dual property" state, because it classifies property as either "marital property" or "separate property."[4] ***See Batson v. Batson***, 769 S.W.2d 849, 856 (Tenn. Ct. App. 1988); Tenn. Code Ann. § 36-4-121 (Supp. 2002). The distinction is critical, because property classified as "marital" is divided upon the dissolution of a marriage, whereas property classified as "separate" is generally not subject to division. ***Smith v. Smith***, 93 S.W.3d 871, 876 (Tenn. Ct. App. 2002). Consequently, the trial court must determine the nature of the parties' property before it can make an equitable distribution between the parties. ***Id.***

Separate property can become a part of the marital estate if the parties treat it as such. This is accomplished under the doctrines of commingling and transmutation:

> Two related doctrines of community property have made their appearance in the marital property cases. The first of these is commingling, according to which separate property becomes marital property if inextricably mingled with marital property or with the separate property of the other spouse. If the separate property continues to be segregated or can be traced into its product, commingling does not occur. The second doctrine is that of transmutation. This occurs when separate property is treated in such a way as to give evidence of an intention that it become marital

---

[4]
 Tennessee Code Annotated § 36-4-121(b) defines the terms:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce . . . .

Tenn. Code Ann. § 36-4-121(b)(1)(A) (Supp. 2002).

(2) "Separate property" means:

  (A) All real and personal property owned by a spouse before marriage . . .; [and]

  (B) Property acquired in exchange for property acquired before the marriage . . . .

Tenn. Code Ann. § 36-4-121(b)(2)(A) - (B) (Supp. 2002).

property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both of these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of circumstances or communications clearly indicating an intent that the property remain separate.

*Id.* at 878 (quoting ***Hofer v. Hofer***, No. 02A01-9510-CH-00210, 1997 WL 39503, at *3-4 (Tenn. Ct. App. Feb. 3, 1997) (quoting 2 Homer H. Clark, *The Law of Domestic Relations in the United States* § 16.2 at 185 (1987)). Therefore, if the parties "inextricably mingle" their separate property with marital property or with their spouse's separate property, then the separate property becomes marital property. *Id.* In addition, separate property is transmuted into marital property if the parties treat it as marital property. Transmutation "may be done by placing separate property in the names of both spouses." *Id.*

Wife's argument is rooted in her separate ownership of the Richmond Shop Road property at the beginning of the marriage. She argues that, because she owned that home separately before the marriage, and because the proceeds from the sale of that home funded the purchase of the parties' second marital home on East Spring Street, then the trial court erred in finding that the property had "become so co-mingled that no Court could have kept it separate . . . ." Wife's argument, however, ignores the parties' treatment of the property both before and after the marriage. After the parties married, at no time did Wife seek to protect her separate ownership in either the Richmond Shop Road home or the East Spring Street home. On the contrary, the undisputed evidence at trial shows that Husband and his son made several improvements to both the Richmond Shop Road home and the East Spring Street home.[5] On the Richmond Shop Road home, Husband and his son installed and repaired fences, cut trees, enclosed the back porch to make a room, added a deck on the back of the house, removed a deck from the front of the house, and put on a new roof. In addition, Wife and Husband used marital funds to buy and sell cows and pigs kept on the property, and thus used the property for the mutual benefit of both parties.[6] Moreover, in a classic case of transmutation, the East Spring Street home was purchased in the names of both Wife and Husband, with no provision that it should be considered as Wife's separate property. It is undisputed that Wife and Husband together contributed to the renovations of the East Spring Street house. Under these circumstances, the evidence clearly supports the trial court's conclusion that the parties' real property was so commingled that it could not be deemed separate property.

_____

[5] Husband's son lived in the mobile home located on the Richmond Shop Road property for a period of time.

[6] Wife argues that the trial court erred in considering evidence of a partnership prior to the marriage as the basis for finding commingling and transmutation. We conclude that the trial court's decision would have been proper even without the consideration of this factor. Therefore, we believe the court's consideration of a pre-marriage partnership, if error, was harmless.

Wife also argues that, even if the East Spring Street home should be considered marital property, the trial court erred in failing to consider the size of her estate at the beginning of the marriage, as compared to the size of Husband's estate at that time.[7] She argues that, under the reasoning employed in **Brock v. Brock**, 941 S.W.2d 896 (Tenn. Ct. App. 1996), the extent to which a party contributes to the wealth of the marriage should be considered in determining how the marital estate should be equitably divided. *See Brock*, 941 S.W.2d at 901. From our review of the record, the trial court gave due consideration to this factor, and considered numerous other pertinent facts as well in making the distribution of marital property in this case. Considering the record as a whole, we cannot conclude that the trial court abused its discretion in determining to divide the parties' assets equally. *See* Tenn. Code Ann. § 36-4-121(c) (Supp. 2002).

Finally, Wife argues that the trial court erred in its division of marital debt. She contends that the trial court should have divided the $17,000 debt to Spears evenly between the parties, rather than burdening her with the entire $10,779 loan to her son Phillip. She cites to testimony at trial indicating that Wife and Husband regularly gave financial assistance to Husband's children as well as to Wife's children. She also points out that Husband acknowledged that the total debt to Spears belonged to both Wife and Husband. In response, Husband claims that Wife indicated that she would "fix it up with [Spears] and let Phillip pay [Spears] the $10,000 back for the $10,000 we owe her," and argues that it was equitable to hold Wife responsible for collecting the money from her son to pay back Spears.

The trial court apparently credited Husband's testimony that the parties had agreed that Wife's son Phillip would repay Spears the $10,000 that the parties borrowed from her to loan to Philip. Even though Husband candidly acknowledged that both parties borrowed the money, if the parties understood that Philip would repay it, allocating a portion of that debt to Husband would put him in the position of either trying to persuade Phillip to pay Spears or to repay it himself. The remainder of the debt to Spears, the portion not loaned to Phillip, was divided evenly between the parties. Under the circumstances, we find no abuse of discretion in the trial court's allocation of the marital debt. Thus, the trial court's overall division of marital property, including its division of martial debt, must be affirmed.

---

[7]Wife also asserts that this was a short-term marriage and, consequently, the trial court should have attempted to put the parties in the same financial position as they were in before the marriage. *See Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988) (determining that a five-year marriage was short in duration and, therefore, the court should put the parties in a pre-marriage financial situation). We disagree. Considering the length of this marriage and the parties' treatment of the assets as marital, the trial court was not compelled to divide the marital assets in the same manner as it would for a marriage of short duration. *See id.*

The decision of the trial court is affirmed. Costs are to be taxed against the Appellant, Marcia Ann Raines, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE