IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 3, 2003 Session

## JASON G. GULVARTIAN v. SHENNA HOPE GULVARTIAN

**Direct Appeal from the General Sessions Court for Loudon County**
**No. 8050      Hon. William H. Russell, Judge**

**FILED FEBRUARY 24, 2004**

**No. E2002-03117-COA-R3-CV**

The Trial Court in this divorce action awarded child support for the two children of the parties and attorney's fees to the mother. The father appeals. We affirm, as modified.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Scott D. Hall, Sevierville, Tennessee, for Appellant.

Jerrold L. Becker, Knoxville, Tennessee, for Appellee.

### OPINION

In this divorce action, the husband has appealed the Trial Court's award of child support and the award of attorney's fees to the wife.

By way of background, the parties were divorced in 2002 on stipulated grounds after a 13 ½ year marriage, the second marriage for both. Two minor children were born of the marriage, ages 10 and 12 at the time of trial. The parties resided in California throughout their marriage, and the wife, who is originally from Tennessee, returned home to Loudon County in November of 1999 with the children, thereafter filing this divorce action in August 2000. Prior to the move to Tennessee, the wife had moved from the marital home into an apartment in California, where the husband paid all the expenses plus an additional $2,000.00 per month to her during that time. In that

same year his tax return reported income of $12,000.00. After the wife's move to Tennessee, the husband continued to pay the children's private school tuition plus $2,000.00 per month to the wife. However, after she filed for divorce, he began sending $1,000.00 per month, claiming he could no longer afford $2,000.00. The legal proceedings were protracted, but the appeal has been narrowed to the child support issues.

Following trial, the Trial Court ordered the husband to pay $3,000.00 per month child support, plus private school tuition of $10,000.00 per year, and a car payment to the wife "for the benefit of the parties' minor children." Further, he was also required to obtain health insurance coverage for the children and to pay for the visitations costs for travel between California and Tennessee.

On appeal, he argues that the Judge's award under the child support guidelines, equates to a monthly income of over $13,000.00 per month. He contends that he is unable to make these support payments because, according to his tax returns, the most he earned in any one of the past five years was $51,300.00, and in most years considerably less. The Trial Court addressed the issue of the husband's income in its findings and said:

> That the Court finds that the father conducts his business affairs in such a manner as to baffle and confuse all parties, including the Court, that it is impossible to make an accurate determination as to his income. However, based on his demonstrated ability to provide in the past and his continuing performance during the separation the court finds and orders that the father shall pay to the wife child support in the amount of three thousand dollars ($3,000.00) per month. For reasons previously stated the normal guidelines are not applicable in this case.

A review of the evidence demonstrates that many of the husband's answers were rambling and evasive and non-responsive. When the parties were married in 1988, husband disclosed in a prenuptial agreement that he had assets totaling approximately $5.2 Million, with only minimal encumbrance. The husband denied this figure at trial, and claims that he lost virtually all of his wealth by the mid 1990's in bad investments and real estate ventures. He gave sketchy details of exactly how he lost this wealth. He testified that he no longer has any of the assets disclosed in the prenuptial agreement, except for a Lamborgini Countach automobile.

The wife testified that she was aware that the husband could lose a great deal of money "and not blink an eye." She also testified that he had good solid businesses and investments that made "tons of money" although she did not know exactly how much he earns, particularly since the separation.

The husband is in the retail jewelry business, and has been involved in four ventures since the early 90's. Today, according to the evidence, his only present interest is a 50% partnership in Monaco Trade, LP. In the 90's he owned a series of jewelry stores that had inventories in excess of one million dollars on some occasions.

In 2002 Monaco Trade's gross sales were about one million dollars. The company leases a 2001 Mercedes for him at a cost of $800.00 per month. He does not keep a log for business and personal usage, and the company does not report the lease as income to him. Monaco Trade has debts estimated at $500,000.00 to $600,000.00 and assets of approximately $600,000.00.

The husband holds a general power of attorney for both of his elderly parents who speak almost no English. They trust him to help them with their financial matters, and his parents have had interests in some of the husband's enterprises. The husband testified that he owes large personal indebtedness, and the IRS is claiming he owes anywhere from $100,000.00 to $170,000.00 in taxes and penalties.

The husband resides in a 5,000 square feet home, expensively custom decorated with a value of approximately $850,000.00 in Mission Viejo, California. The mortgage payment is between $4,000.00 and $6,000.00 per month. The husband testified the house is owned by his mother. In this regard, the wife testified that she understood the husband owned the house until several years into the marriage when he told her he changed the title on it to his mother because of various lawsuits against him.

Despite all of the adverse financial circumstances testified to by the husband, it appears that his lifestyle has not been noticeably compromised or disrupted. He claims, however, that he has financially survived only by liquidating property (without identifying the property) and borrowing on credit cards. He continues to travel abroad extensively, allegedly for business purposes to buy jewelry.

Our review of findings of fact by a trial court are *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998); Tenn. R. App. P. 13(d). If the trial court makes no specific finding of fact on a relevant matter, the reviewing court reviews the record to determine where the preponderance of the evidence lies, affording no deference to the lower court. *Kendrick v. Shoemake,* 90 S.W.3d 566, 569 (Tenn. 2002). The lower court's conclusions of law carry no presumption of correctness on appeal. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

A trial court's decision may be set aside for abuse of discretion if it rests on an inadequate evidentiary foundation, is contrary to governing law, misapplies or fails to identify controlling legal principles, or is against the substantial weight of the evidence. *State ex rel. Vaughn v. Kaatrude,* 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000); *White v. Vanderbilt University,* 21 S.W.3d 215, 222 (Tenn. Ct. App. 1999); *Walton v. Camp,* 2002 WL 1349506 at *5 (Tenn. Ct. App. Mar. 19, 2002).

Determining the correct amount of the non-custodial parent's net income is the most important element of proof in the initial proceeding to set child support. *Turner v. Turner,* 919 S.W.2d 340, 344 (Tenn. Ct. App. 1995); *Kirchner v. Pritchett,* 1995 WL 714279 (Tenn. Ct. App. 1995). "The goals of the child support guidelines are best fulfilled by use of current, accurate

information regarding the obligor parent's income." *Tinsley v. Tinsley,* 2002 WL 31443210 at \*3 (Tenn. Ct. App.  Nov. 1, 2002).

The record before us clearly supports the Trial Court's conclusion that he could not accurately determine the husband's income for purposes of establishing child support.  In this case, the amount of child support husband has paid in the past is not disputed, and it is very near equal to, and sometimes more than, the total income he has reported on his tax returns.   He offered no explanation for this on cross examination, except he explained as to some specific circumstances that he borrowed money to pay the obligations.

The child support guidelines speak to this dilemma, where the obligor's income cannot be determined from the evidence, the guidelines authorize the trial court to impute any income to the obligor. *See Tenn. Comp. R. And Regs.,* ch. 1240-2-4-02(e).  Moreover, if the court finds the evidence presented of the obligor's income is not credible, it may impute income and determine the amount of child support accordingly. *See, generally, Wills v. Wills*, 2003 WL 22209357 (Tenn.Ct. App. Sept. 25, 2003).  The record is clear that the Trial Court found the husband not credible, and even deceptive.  Trial courts are in the best position to "observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility." *Wells v. Tenn. Bd. Of Regents,* 9 S.W.3d 779, 783 (Tenn. 1999).

A finding that an obligor has the potential or capability to produce greater income has been treated as the functional equivalent of, or an implicit finding of, willful and voluntary unemployment or underemployment.   It is therefore appropriate to apply the principles of the voluntary unemployment cases to self-employment cases.  If the obligor is found to be willfully and voluntarily unemployed or underemployed, "child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." *Willis v. Willis,* 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). *Tenn. Comp. R. & Regs.,* 1240-2-4-.03(3)(d).

Another criteria for imputing income is a lifestyle inconsistent with the obligor's claims. *Tenn. Comp. R. & Regs*., ch. 1210-2-4-.04(1)(f) provides:

> Valuable assets and resources (expensive home or automobile which seem inappropriate for the income claimed by the obligor) of the obligor should be considered for the purpose of imputing income and increasing the support award in any case if the court finds that equity requires it.

The authorities clearly empower the Court to impute income to the husband on the evidence before us.  The problem is ascertaining the amount of income which should be imputed to the husband.  The only non-speculative approach that this record supports is to set the child support at the amount the husband was voluntarily paying to the mother before this dispute arose, which was $2,000.00 per month.  There was no evidence in the record to indicate there has been any material change in the husband's status since that amount was being paid.  It may be reasonably inferred from these payments that he had sufficient income to make these payments, and that he should be required to

continue making child support payments on that basis on behalf of the children.  Accordingly, we modify the Judgment of the Trial Court to require the husband to pay the mother $2,000.00 per month, plus the school tuition and other obligations ordered as child support by the Trial Judge.

Next, the husband contends the wife can afford to pay her attorney's fees because she is capable of working and because she received $80,000.00 to $90,000.00 worth of jewelry in the divorce, along with most other personal property.

Attorney fee awards are treated as a form of spousal support determined by consideration of the factors set forth in Tenn. Code Ann.  § 36-5-101(d).  *Gilliam v. Gilliam,* 776 S.W.2d 81, 86 (Tenn. Ct. App. (1988); *Fulbright v. Fulbright,* 64 S.W.3d 359, 369 (Tenn. Ct. App. 2001).  An award of attorney fees is proper when one spouse is disadvantaged and does not have sufficient resources to pay such fees, and such awards lie within the sound discretion of the trial court and will not be disturbed on appeal unless the evidence preponderates otherwise.  *Kincaid v. Kincaid,* 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995).  The trial court's discretion extends to reasonable fee awards in child support cases.  *Huntley v. Huntley,* 61 S.W.3d 329-337 (Tenn. Ct. App. 2001); Tenn. Code Ann.  § 36-5-103(c).  The custodian who defends a child support award incurs litigation costs for the children's benefit, using funds that reduce the assets left available for the children's actual care; fairness dictates that the non-custodial parent bear these expenses.  *Huntley,* 61 S.W.3d at 329; *Ragan v. Ragan,* 858 S.W.2d 332 (Tenn. Ct. App. 1993).  Moreover, the court has authority to award additional attorney's fees incurred on appeal where appropriate.  *Seaton v. Seaton,* 516 S.W.2d 91, 93 (Tenn. 1974).  The evidence does not preponderate against the Trial Court's award of attorney fees, and we affirm the Trial Court on this issue.  On application of the appellee, upon remand, we direct that the Trial Court set reasonable attorney's fees for the appellee for defending the award of child support on appeal.

The Judgment of the Trial Court is affirmed, as modified, and the cause remanded, with the cost of the appeal assessed to Jason G. Gulvartian.

_____
HERSCHEL PICKENS FRANKS, J.