IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 11, 2007 Session

## CARMEN RAMPAUL MOHAMMED v. FAROUK MOHAMMED

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-004275-02     Rita L. Stotts, Judge**

**No. W2007-00360-COA-R3-CV - Filed March 11, 2008**

This is an appeal involving a post-divorce award of alimony *in futuro*. The court awarded the wife a divorce from the husband after 36 years of marriage. The husband has a bachelor's and master's degree in electrical engineering. The wife does not have a college degree and makes a living as a hair stylist. In the final divorce decree, the court awarded the wife temporary alimony in the amount of $3,500 per month. The husband sought to reduce his alimony obligation. At the hearing, the court found a material change in circumstances and reduced the husband's alimony obligation from $3,500 a month to $2,000 a month. The court ordered, however, that this $2,000 a month award was *in futuro* until the wife's death or remarriage. The husband appeals, and we affirm and remand for a determination of an appropriate award of the wife's attorney's fees.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Robert S. Weiss, Memphis, TN, for Appellant

Sharon Harless Loy, Memphis, TN, for Appellee

## MEMORANDUM OPINION [1]

### I. FACTS & PROCEDURAL HISTORY

After 34 years of marriage, Carmen Rampaul Mohammed ("Appellee" or "Wife") filed for divorce from Farouk Mohammed ("Appellant" or "Husband") on July 30, 2002. The parties have two adult children. Wife alleged in her complaint that Husband physically abused her on several occasions and threatened to kill her. Wife indicated that the court had previously granted an *ex parte* order of protection against Husband. The complaint also alleged irreconcilable differences and inappropriate marital conduct. Husband filed an answer and counter-complaint for divorce on August 23, 2002, which alleged that Wife was guilty of inappropriate marital conduct and habitual drunkenness.

On April 29, 2004, Wife filed a motion for a default judgment based on Husband's refusal to comply with discovery requests and court orders. Previously, Wife filed numerous petitions for contempt due to Husband's failure to comply with court orders. On March 18, 2003, Wife filed a contempt petition alleging that Husband sold two parcels of real property in violation of a temporary injunction. The court ordered that Husband obtain an appraiser to determine the value of the two parcels. On January 16, 2004, Wife filed a contempt petition, alleging that Husband had failed to comply with a consent order on discovery and two other orders. On March 8, 2004, the trial court ordered Husband to comply with a consent order dated May 27, 2003. Wife alleged in her motion for a default judgment that Husband had failed to comply with certain orders, and also had failed to comply with the *pendent lite* support order, which required him to pay the mortgages on the marital home and rental properties owned by the parties. Wife also alleged in her motion for a default judgment that Husband failed to comply with discovery requests pursuant to Rules 33 and 34 of the Tennessee Rules of Civil Procedure.

Husband then filed his first Chapter 13 petition for bankruptcy protection. Wife, however, obtained relief from the automatic stay.[2] The trial court then granted Wife's motion for default judgment and set the matter on the uncontested divorce docket. On December 12, 2004, the court entered a final decree of divorce based upon the parties' stipulation of Husband's cruel and inhuman treatment of Wife. The court awarded Wife temporary alimony in the amount of $3,500 per month. The court stated that Husband "has the ability to earn income to the extent that the Husband is capable and able to pay alimony to the Wife." The court found that Husband had worked as an

---

[1] Rule 10. MEMORANDUM OPINION

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] Husband filed subsequent Chapter 13 petitions on August 31, 2005; January 12, 2006; and June 21, 2006.

electrical engineer during the marriage. In 1998, Husband claimed a gross annual income of $127,659; in 2001, Husband claimed in a financial application, under oath, that his income was $145,000 and that his net worth was $725,000. Husband did not file income tax returns in 2001, 2002, or 2003. The court ordered Husband to pay Wife temporary alimony in the amount of $3,500 per month, reserving the final ruling on alimony "after such time as the Court determines the net value of and distribution of the real property . . . ." The court stated that "[t]he alimony award is based upon consideration of all relevant statutory factors provided by Tenn. Code Ann. § 36-5-101." The court also awarded Wife her attorney's fees based on "Husband's efforts to thwart discovery" and on Wife's financial need.

As to the division of the marital property,[3] Husband received, among other things, the interest in the two Lot-A-Burger franchise restaurants and one Church's Chicken franchise restaurant. Wife received the marital home and a money market account in the amount of $65,000. As to the division of marital debt, "Husband is ordered to be solely responsible for any and all debts incurred by him, including but not limited to all amounts owed to unsecured creditors included in Husband's Voluntary Petition for Chapter 13 Bankruptcy protection." The decree also ordered Husband to continue paying the mortgage on the marital home. The couple owned rental properties, and the court ordered that "Husband shall not accept any rental payments from tenants and shall direct all rental payments to be made directly to the escrow account [ ], as previously ordered by this Court. Such rental payments may be used to pay the mortgages payments on the properties until such time as the properties are sold." Wife was to receive any rental payments in excess of the monthly mortgage payments. The parties had no separate property.

On January 10, 2005, Husband filed a motion for a new trial and a motion to alter or amend the final decree of divorce. Husband alleged that he had turned over all discovery documents in his possession at the time of Wife's request, and thus, the entry of a default judgment was error. The court denied this motion on February 23, 2005. Wife then filed several petitions for contempt.[4] The marital home, which was awarded to Wife, was foreclosed upon and sold in October of 2006 because of Husband's failure to pay the mortgage. All rental properties were also foreclosed upon.

On January 24, 2006, Husband filed a petition to modify his alimony obligation contained in the final decree of divorce. Husband filed an amended petition to modify on May 23, 2006. Husband's amended petition alleged that since the time of the entry of the final decree of divorce, his financial situation has changed, and that he is unable to meet his alimony obligation. Specifically, Husband alleged that his main source of income was from a Church's Chicken fast food franchise, and that he lost this franchise in April of 2005.

---

[3] The division of marital property is not an issue on appeal.

[4] We need not get into great detail as to all the contempt petitions filed in this case, as they are numerous and are not dispositive of the sole issue on this appeal.

At the modification hearing held on November 30, 2006 and January 12, 2007, Husband testified that as of 2001, he has worked at his two Lot-A- Burger restaurants that he leases from two other individuals. Husband must pay the lessors each $4,000 a month. Husband testified that business is down because of changes in the demographics and the loss of his biggest customers, employees from a railroad company. Husband testified that he is currently only able to pay one of the lessors $4,000 a month, and he is paying the second lessor $2,300 a month. Husband is also responsible for the payment of county and city taxes on these two restaurants. Husband's 2003 partnership income tax return stated a loss of $27,142.58 in 2003 and a loss in 2005 of $8,224. The 2004 statement showed income of $9,700. Husband previously owned a third franchise, a Church's Fried Chicken, but that franchise was terminated in May of 2005. Husband also testified that he is currently involved in a Chapter 13 Bankruptcy proceeding and that he has placed around $10,000 into that proceeding.

On cross-examination, Husband testified that he was shot in 2002 and the bullets remain in his waist, and thus he cannot take jobs where he must climb or walk for long periods. Husband has both a bachelor's degree and master's degree in engineering. Husband testified that he had worked in the past as an electrical engineer, but has not worked in that field since 1999. Husband's affidavit of income and expenses claimed that he had a monthly gross income of $3,400.00 and a monthly net balance after expenses of a negative $4,494.25. Husband's greatest expense listed on his affidavit was that of groceries/dining out, which he alleged was $600 a month.

Wife testified that she is a hair stylist and works on commission at a hair salon. She retains 60 percent of her earnings, and the other 40 percent goes to the owner of the salon. Wife earns on average $75 a week in tips from her customers at the salon. Wife does not have a college education and was sixteen years old when the parties married. Wife has worked as a hair stylist for the past 16 years. Wife suffers from diabetes and spends around $100 a month on her prescriptions. Wife's income reported on her 1099 was $26,754.80 in 2005, and $30,434.46 in 2006. Wife made a $25,000 down payment on her house that she purchased in 2005. Wife's affidavit of income and expenses listed her gross monthly income before self-employment taxes at $1,456, with a net amount at $1,300.42. Wife listed her total average monthly expenses at $2,745.71. She also testified that Husband's alimony arrearage is around $58,000.

The trial court pronounced its ruling from the bench and later entered an order on January 22, 2007, which reduced Husband's alimony obligation from $3,500 a month to $2,000 a month. As to Husband's claimed negative income of $4,494.25 a month, the court pointed out that of that amount, $3,500 was listed as alimony expense which Husband was simply not paying. Although the court stated from the bench that Husband was not "completely candid," the court went on to find in its order that Husband had shown a substantial and material change in circumstances that warranted the reduction in his alimony obligation. The court ordered, however, that this $2,000 a month alimony award was *in futuro*, to be paid until Wife's death or remarriage. Husband filed his notice

of appeal on February 15, 2007. The court subsequently entered a corrected order on May 4, 2007, *nunc pro tunc* to the January 22, 2007 order.[5] The court, in greater detail, found as follows:

> 2. That the Plaintiff/Respondent is awarded alimony in futuro until her death or remarriage based on the following findings:
>    a. That the Plaintiff/Respondent is relatively economically disadvantaged.
>    b. That rehabilitation is not feasible, such that the Plaintiff/Respondent is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage.
>
> . . .

## II. ISSUE PRESENTED

Appellant presents the following issue for review: Whether the trial court abused its discretion by awarding Wife alimony *in futuro* in the amount of $2,000 per month because Wife is not economically disadvantaged. For the following reasons, we affirm the decision of the trial court. In addition, we award Appellee her attorney's fees.

## III. STANDARD OF REVIEW

We review a trial court's conclusions of law under a *de novo* standard with no presumption of correctness. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)). We afford a trial court's factual findings a presumption of correctness, and we will not overturn such findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2007); ***Bogan v. Bogan***, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Watson v. Watson***, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). The trial court has great discretion in setting an alimony award, and we will not interfere with such a decision absent an abuse of discretion. ***Robertson v. Robertson***, 76 S.W.3d 337, 342 (Tenn. 2002); ***Crabtree v. Crabtree***, 16 S.W.3d 356, 360 (Tenn. 2000) (citing *Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1989)).

---

[5] Although neither party raises the issue of whether the trial court lacked subject matter jurisdiction to enter a corrected order after Husband filed his notice of appeal, generally, "once a party perfects an appeal from a trial court's final judgment, the trial court effectively loses its authority to act in the case without leave of the appellate court." ***First American Trust Co. v. Franklin-Murray Development Co., L.P.***, 59 S.W.3d 135, 141 (Tenn. Ct. App. 2001) (footnote omitted). Remand on the matter is unnecessary, though, as we can decide the issue based upon the record and the original order.

## IV. DISCUSSION

### A. Alimony in futuro

On appeal, Husband asserts that the trial court abused its discretion by awarding Wife alimony *in futuro* in the amount of $2,000 per month, because Wife failed to establish that she had a need for such an award, and that the $2,000 a month alimony award exceeds his income.

Trial courts have a great deal of discretion in determining the nature, duration, and amount of an alimony award. *Fulbright v. Fulbright*, 64 S.W.3d 359, 367 (Tenn. Ct. App. 2001); *see also* Tenn. Code Ann. § 36-5-121(a) (2005). Likewise, trial courts have wide latitude in modifying an award of spousal support. *Perry v. Perry*, 114 S.W.3d 465, 466–67 (Tenn. 2003) (citation omitted) ("Because modification of a spousal support award is factually driven, a trial court's decision to modify its award is given wide latitude within the trial court's range of discretion."). Trial courts may, "upon application of either party, [ ] award an increase or decrease or other modification of the award based upon a showing of a substantial and material change of circumstances[.]" Tenn. Code Ann. § 36-5-121(a) (2005).

An award of alimony *in futuro*, also referred to as permanent or periodic alimony, "continues support that was incident to the marital relationship and continues indefinitely. It is generally based on the need of the recipient for continued longterm support after the breakup of the marriage." *Bryan v. Leach*, 85 S.W.3d 136, 146 (Tenn. Ct. App. 2001) (citation omitted). Tenn. Code Ann. § 36-5-121 (d)(3) provides as follows:

> Where there is relative economic disadvantage and rehabilitation is not feasible, in consideration of all relevant factors, including those set out in subsection (i), the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient[.] . . .

The factors set out in subsection (i), which the trial court must consider when determining the nature, amount, length, and manner of payment of the alimony award, are as follows:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
> (3) The duration of the marriage;
> (4) The age and mental condition of each party;

-6-

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i). The trial court should consider these same factors when modifying an award.[6] **Norvell v. Norvell**, 805 S.W.2d 772, 774 (Tenn. Ct. App. 1990) (citing *Threadgill v. Threadgill*, 740 S.W.2d 419, 422 (Tenn. Ct. App. 1987)).

Turning back to the present case, the judge implicitly found in the original order that Wife's rehabilitation is not feasible. See **Hopkins v. Hopkins**, 2002 WL 31387297, at *3 (Tenn. Ct. App. 2002) ("Although the record does not specifically show that the Trial Court found that rehabilitation of [Wife] is not feasible, such finding is implicit in the Trial Court's award of alimony *in futuro*."). The trial judge did not make findings of fact as to the statutory factors that she considered when she set Wife's permanent alimony award. Thus, we must review the record to determine where the preponderance of the evidence lies. **Burlew v. Burlew**, 40 S.W.3d 465, 470 (Tenn. 2001) (citing *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000)); **Hopkins**, 2002 WL 31387297, at *3.

We conclude that an award of alimony *in futuro* in the amount of $2,000 is appropriate in this case. We are dealing with a marriage of 36 years, which ended because of Husband's inhumane treatment of Wife. At the time of the divorce, Wife was 52 years old and Husband was 56 years old.

---

[6] The obligor spouse must prove a change of circumstances after the entry of the decree ordering the payment of alimony. *Norvell*, 805 S.W.2d at 774 (citation omitted). Wife argues in her brief that "Husband failed to prove that his income has changed subsequent to the entry of the Final Decree of Divorce." Wife's argument concludes, however, that "the evidence strongly supports the trial court's ruling and said ruling should not be disturbed." We do point out that it is undisputed from the record that Husband lost his Church's Chicken restaurant after the award of temporary alimony. In any event, Wife fails to argue that the court erred in reducing the alimony award, so we will not address that issue.

Wife is a hair stylist with no college education, and Husband has two advanced engineering degrees. Thus, Husband has a considerably higher earning capacity than Wife. The record indicates that Wife supported Husband while he pursued his degrees. As to the health of the parties, Wife suffers from diabetes, although Husband testified that he suffers a physical impairment due to a shooting incident. There is no testimony that either party is unable to work because of the aforementioned ailments.

We next turn to two of the most important factors, which are the need of the disadvantaged spouse and the obligor spouse's ability to pay. ***Perry v. Perry***, 114 S.W.3d 465, 467 (Tenn. 2003). As to Wife's financial need, her affidavit of income and expenses stated $1,300.42 net income and $2,745.71 monthly expenses. Wife also testified that as a hair stylist, her monthly income fluctuated. The trial court found Wife to be a credible witness. As to Husband's ability to pay, the judge found that Husband had not been "candid" with the court. The trial court pointed out that of Husband's alleged negative income of $4,494.25 a month, $3,500 in alimony expense was not actually being paid. We also point out the questionable $600 a month grocery/dining out expense that Husband claimed in his affidavit of income and expenses. Furthermore, Husband has two advanced degrees and is choosing not to use them.

Finally, we address Husband's argument that the trial court entered the award of alimony *in futuro* as a form of punishment against him for his previous failures to comply with court orders. While we agree that "unneeded alimony may not be added to punish a guilty spouse[,]" ***Wilder v. Wilder***, 66 S.W.3d 892, 895 (Tenn. Ct. App. 2001), we find Husband's argument meritless. Nothing in the record indicates that the trial court based its decision to award alimony *in futuro* on Husband's previous contemptuous behavior.[7] Taking into consideration the aforementioned, the trial court did not abuse its discretion in awarding Wife alimony *in futuro* because Wife is economically disadvantaged. In sum, we find that the evidence does not preponderate in Husband's favor, and we affirm the alimony award.

### B. Attorney's fees on Appeal

Wife has requested an award of her attorney's fees on appeal. "Attorney's fees are only awarded if provided for by contract, statute, or a recognized ground of equity." ***Parchman v. Parchman***, No. W2003-01204-COA-R3-CV, 2004 Tenn. App. LEXIS 768, at *15 (Tenn. Ct. App. Nov. 17, 2004) (quoting *Austin Powder Co. v. Thompson*, No. 03A01-9607-CV-00229, 1996 Tenn. App. LEXIS 805, at *5 (Tenn. Ct. App. Dec. 16, 1996)). When dealing with cases of divorce, we may award attorney's fees based upon the prevailing party's economic disadvantage. ***Boggs v. Boggs***, No. M2006-00810-COA-R3-CV, 2007 WL 2353156, at *6 (Tenn. Ct. App. Aug. 17, 2007). "Thus, parties may be entitled to an additional award for their legal expenses if they demonstrate that they lack sufficient funds to pay their legal expenses or that they would be required to deplete other needed assets to do so." ***Fox v. Fox***, No. M2004-02616-COA-R3-CV, 2006 WL 2535407, at *11

---

[7] We also point out that Tenn. Code Ann. § 36-5-121(i)(12) allows for the court to consider other factors "as are necessary to consider the equities between the parties." Thus, although not solely determinative, the trial court could consider the legal expense Husband created by time after time disobeying court orders.

(Tenn. Ct. App. Sept. 1, 2006). Based on Wife's need and her success on this appeal, we grant Wife an award of her attorney's fees. On remand, the trial court is directed to set the reasonable legal expenses Wife incurred as a result of this appeal.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decision of the trial court and remand on the sole issue of attorney's fees. Costs of this appeal are taxed to Appellant, Farouk Mohammed, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.